## TINDALL *versus* CHILDRESS AND MAY.

S. & P.
2sp250
116 182

1. The statutes of this state, in relation to proceedings at law, in case of a lost note, have not deprived chancery of jurisdiction on the same subject.
2. An action can not be maintained, in this state, to recover back money, lost on a wager.
3. A note executed on sufficient consideration, but lost by an assignee on a horse race, can not be avoided by the payor, in the hands of a subsequent innocent holder, under the statute of 1807,[a] on the subject of gambling considerations.
4. The statute of 1807, on the subject of gaming, does not embrace the case of a *transfer* or *assignment* of a note, won at gaming.

This was a suit in chancery, in Tuskaloosa Circuit court, instituted by Tindall against the defendants in error. The subject of the suit was a lost note, originally executed by Childress to one Stolenwork, who assigned it to May, who transferred it to one McMahan, who delivered it to the complainant.

From the bill, answers and exhibits, it was shewn, that the note came into the hands of McMahan, by May having wagered it on a horse race. Childress and May having set up this defence, the chancellor dismissed the bill on a hearing, and his decision was assigned as error in this court.

*Stewart*, for plaintiff—*Ellis, contra.*

TAYLOR, J.—This suit in chancery was brought to recover the amount of a lost note for two hundred dollars, executed by the defendant Childress to one

---

[a] See Aikin's Digest, page 209.

Stolen work; by him assigned to the defendant May; by him transferred by delivery to one McMahan; and by him in the same way to the complainant.

The defence set up by Childress is, that May had lost the note to McMahan, by betting it on a horse race : that May had given him notice to pay the debt to no person but himself, and that before it was due, he had purchased or paid it to May, and received a release from him : he admits that before doing this, he had received notice from McMahan of the transfer of the note by May to him.

May, in his answer, alleges that he lost the note to McMahan on a horse race, that he had good reasons to believe the note was not won fairly, but that he was cheated out of it ; that he was intoxicated at the time, and the note was delivered up by the stake holders without his assent or dissent.

These are all the facts, which it is considered necessary to notice, to convey a clear idea of the grounds on which the opinion of the court has been founded.

The bill was dismissed by the Circuit court at the costs of the complainant.

Three questions were raised in argument, which it is necessary to decide.

1st. Is there any equity in the bill?

2d. Does the assignment or transfer of a note won at gaming, come within the statute, avoiding all promises, &c. made upon a gambling consideration?

3d. Is there any fraud proved in this case, in the acquisition of the note by McMahan, which can affect the complainant?

It is unnecessary to enter into any thing like an elaborate discussion of the first question. It was not urged by the defendants' counsel, that chancery has

not jurisdiction to enforce the recovery of a lost note or bond. In England, equity is most usually resorted to in such cases, though the jurisdiction of the courts of common law, is at this day, undisputed.

Our statutes, it is true, render the proceedings at common law more safe and easy to the plaintiff, than they were before; but I doubt if it would be wise to deprive the courts of chancery of their jurisdiction.

The second question depends entirely upon the extent to which the common law is limited by our statute. It would be a waste of time to cite authorities, for the purpose of proving that wagers, unless against public policy, were legal and recoverable at common law. Unless, therefore, the provisions of our statute, changing the common law on this subject, extend to the case before us, the assignment of the note for a gambling consideration, was valid, if the transaction were untainted by fraud.

The statute which is to be found in *Toul. Dig,*[a] [a]Page 735. is, so far as it affects this subject, in the following words: " All promises, agreements, notes, bills, bonds, or other contracts, judgments, mortgages, or other securities, or other conveyances whatsoever, made, signed, given, granted, drawn, or entered, or executed by any person or persons whatever, after the passing of this act, where the whole or any part of the consideration of such promise, agreement, conveyance, or security, shall be for money, or other valuable thing whatsoever, laid or betted, &c. on any wager whatsoever, &c. shall be utterly void and of none effect."

This statute is entirely different from those which have been enacted by some of our sister states, which authorise the loser to sue for and recover back any property or money lost by wagering. It is evident

that such a suit could not be maintained in this state. Wherever payment has been made of that which has been lost, it is gone forever : no restitution will be compelled by law.   The bonds, the promises, contracts; securities, &c. made to secure wagers, which have been lost, are totally void : no recovery can be had upon them ; but further than this, no aid is afforded to the loser by the statute.   At common law, the promise, the bond, the security, &c. were binding and obligatory; of course money or property which had been lost and delivered to the winner, could not be recovered back.   The enquiry then is, how far is the common law repealed by the statute ?   The answer is, the bonds, securities, &c. given for a gambling consideration are invalidated.   The statute is in derogation of the common law, and will not be extended beyond its terms : but the most extended construction would not authorise wagers lost and paid, to be recovered back by its provisions.

But is the assignment or transfer of a note, the making or executing a " security or other contract," within the meaning of the act?   It is certain that no other term used in the statute can embrace the transfer of a note.   It is not a " promise, agreement, note, bill, bond, judgment, mortgage, or other conveyance, made, signed, given, &c." for a wager lost.   Although it is a note that passes, it is not a note " made," the consideration of which was money or other thing lost by wagering.   The implied promise contained in the indorsement of the loser, if the transfer be by indorsement, comes within the terms of the statute, and is void, but the responsibility of the payor still continues unaffected by the subsequent transaction : he owes the amount of the note to the holder.

" In an action against the drawer of a bill, it is no defence that the bill was accepted for a gaming debt, if it be indorsed over by the drawer for a valuable consideration to a third person by whom the action is brought."[a] It is true this authority is not directly in point; yet it proves that such consideration only avoids the security itself, and the new contract which is constituted by the assignment, is not infected by the illegality of the consideration of the bill itself.

[a] Chitty on Bills, 79.

The case of *Parr* vs. *Eliason and others*,[b] bears more directly upon the one before us. That was an action of trover for a bill of exchange. The plaintiff residing in Liverpool, in 1799, became possessed of the bill in question, which was drawn by a correspondent in the West Indies upon a house in London, in favor of the plaintiff or his order, and accepted, payable the twenty-seventh July, 1800. The plaintiff having occasion to raise money, applied to the house of Persent & Bodeker, on the eighteenth June, 1799, to discount the bill, which they agreed to do, and took the full discount; stipulating however, that the plaintiff should, in part payment of the money, take their acceptance of a bill to be drawn by him on them, at three months date, which was done accordingly; and at the same time the plaintiff endorsed the original bill to them. Persent & Bodeker became bankrupts in September, 1799, having first negotiated the bill; and the same was afterwards paid to the defendants, as assignees under their commission, in satisfaction of a debt due to the bankrupt's estate. It also appeared, that after the bankruptcy, the plaintiff was obliged to take up and pay the bill drawn by him upon the bankrupts, and accepted by them.

[b] 1 East, 92.

It was contended at the trial, Lord *Kenyon* presid-

ing, that the indorsement of the bill by the plaintiff to the bankrupt, for a usurious consideration, avoided the security, by the statute 12 Ann, whereby all bonds and assurances, for "payment of any money to be lent upon money, &c. shall be void." But Lord *Kenyon* was of opinion, that the assignees of the bankrupt had a right to protect their possession of the bill by the title of the party from whom they received it in payment, who was an innocent holder; and that the bill being valid in its inception, the statute of usury did not apply to the present case; and the plaintiff was non-suited. A rule to show cause why the non-suit should not be set aside, was obtained, which was argued before the Court of King's Bench, and the rule was discharged. Lord *Kenyon*, who delivered the opinion of the court, said, " where the bill itself in its original formation, is given for a usurious consideration, the words of the statute are peremptory, that the assurance shall be void : and the construction which has been put upon the statute, has gone far enough in saying it shall be avoided, even in the hands of an innocent indorsee, without notice. But no case has gone the length which is now contended for; nor do the words of the statute require it. Here the bill was fair and legal in its concoction; and therefore, no advantage can be taken of what happened afterwards against *bona fide* holders."

This is certainly a very strong case. The usury was exacted by the bankrupt in the contract of indorsement to him, yet because he passed off the bill to an innocent indorsee, the usury did not affect the rights of the holders, into whose hands the bill had come in the course of business, although they were the assignees of that bankrupt. And here too, the

point is directly decided, that the endorsement or transfer of the bill for a usurious consideration does not come within the meaning of the statute. . It may be replied that this was the case of a commercial instrument, the innocent holder of which is always highly favored in England.    The decision, however, is not made to turn on that point.    It is true, that it is said in the opinion, " the commerce of this country subsists upon paper credit;" but it was because the statute did not extend to indorsements that the plaintiff's action  was determined to be well brought.

The case of *Gaither* v, *The Farmers' and Mechanics' Bank of Georgetown*, does support a different doctrine with regard to the effect of an indorsement of [1 Peters37] a note for a usurious consideration.    In that case, Gaither, the original defendant and payor, proved that the note had been assigned by the payee to the plaintiffs on a usurious contract, and this was holden to be a good defence.    Yet there, the doctrine is expressly recognised, that if a " note be free from usury in its origin, no subsequent usurious transaction respecting it, can affect it with the taint of usury."

We would not be understood as either recognising or denying the doctrine laid down in the case last cited : it is not important to do the one or the other, for this case can be disposed of without being at all affected by the decision.    The result of the case, however, does seem to come into collision with the " rule" which is expressly recognised in it.

As has before been observed, there is no violation of the statute making void contracts, &c. to secure money, &c. won at play, to receive the fruits of successful wagering ; that which is thus paid can not be recovered back.    The assignment or transfer of a

note by the loser to the winner, which has been thus won is, in reality, a payment. And although the note is not the debt itself, but only evidence of it, yet the transfer of the note is always viewed and treated as the transfer of the debt. The assignment is not necessary to the validity of the transfer, and therefore can not vitiate it.

It is said by the court, in *Gaither* vs. *The Farmers' and Mechanics' Bank*, that if no action could be sustained by the indorsee against the indorsor, he can not support one against the payor. I can not see the reasonableness of this position. The indorsement has a two-fold effect. 1st. It vests the property in the debt, of which it is an evidence, in the indorsee. 2d. It is a contract that if the payor does not pay, the indorsor, if due diligence is used by the indorsee, will. Is it absolutely necessary that the contract of liability should be legal to make the transfer so? I should think not. It may be said, if one man sell a horse to another, the contract has a double effect. First—the title passes to the vendee; and second, the vendor is liable to him if he commit a fraud in the sale. But if instead of selling, he was to wager and lose the horse, there could be no recovery on account of the deceit, yet the property in the horse, if he were delivered, would vest in the winner. So in the case of a note which is won and assigned, I conceive the interest may vest in the winner, and yet the contract of liability, as to the indorsor, be void.

But it is unnecessary to discuss this question further, or to collate authorities upon it, as the complainant, from the evidence before us, occupies the place of an innocent holder.

There is no proof that the complainant had notice

of the manner in which McMahan acquired the note from May; and there is clear and satisfactory evidence that the defendant, Childress, knew that the complainant held the note when he made the arrangement with May, by which, for half its amount or less, he obtained an acquittance. It is true, the answer of Childress charges the complainant with notice, but this is not responsive to any allegation in the bill, and therefore should have been proved.

It is equally unnecessary to enter upon an examination of the fraud alleged to have been practiced upon May. If such fraud were proved, a knowledge of it in Tindall must be proved, which is not pretended. The rule is general, that the title of an innocent purchaser from a fraudulent one, cannot be impugned by the fraud.

It is believed therefore, that the suit is well brought against Childress; but as no good reason can be perceived for making May a defendant, the loss of the note being the only ground of chancery jurisdiction, the decree of the Circuit Court, so far as it dismisses the suit as to May, is correct; but there should have been a decree against Childress, for the amount of the note, and interest; and such is the decree of this court.